UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RHANDA ROCKSON,

                Plaintiff,                              Case No. 13-cv-14486

v                                                            Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

                Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING PURSUANT TO SENTENCE FOUR**

Plaintiff Rhanda Rockson challenges the Commissioner's denial of her application for Social Security benefits. She claims that she is disabled as defined by the Social Security Act because she suffers from fibromyalgia, lupus, obesity, depression, and anxiety.

On May 21, 2014, Rockson filed a motion for summary judgment, requesting that this case be remanded to the Administrative Law Judge pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. The Commissioner filed a response motion for summary judgment, requesting that the ALJ's determination be affirmed.[1] Because the ALJ did not adequately explain why Rockson failed to meet the Listing criteria for systemic lupus erythematosus at Step Three of the analysis, this matter will be remanded.

**I**

Rockson was 47 years old at the time of the most recent administrative hearing. A.R. 43. She completed high school and went to college. *Id*. She received training in data processing and gained certification from IBM for mouse training. *Id*.

---

[1] On September 9, 2014, Rockson filed a motion to extend the time in which to file a reply. *See* Mot. Extend Time, ECF No. 29. She attached her proposed reply as an exhibit to the motion to extend. *Id*. The motion was granted; however, Rockson never filed a reply on the docket.

**A**

On October 10, 2012, Rockson filed the instant claim asserting that she was unable to work due to a host of ailments, including fibromyalgia, lupus, depression and anxiety, obesity, carpal tunnel syndrome, hypertension, irritable bowel syndrome, and intermittent residual headaches from a motor vehicle accident. A.R. 30. She testified that she has trouble with personal grooming, completing household chores, and preparing meals. A.R. 51, 54. She also claimed that she suffers from a speech impediment, handles stress poorly, and has trouble being alert: "I would have to be on my toes, as far as catching things and being alert as to making sure deals went through and things like that. And lately, I have not been able—I would not have been able to do that." A.R. 52, 57. Rockson further testified that she has difficulty driving: "I drive, but I'm not supposed to drive because of my head injury and because of I'm reckless." A.R. 54.[2]

**B**

Rockson also provided reports from several physicians to substantiate her claim of disability. Most importantly, she provided a "Lupus (SLE) Medical Source Statement—14.02" prepared by Dr. Mustapha Mallah in April 2013. In the report, Dr. Mallah notes that Rockson suffers from malar rash on her cheeks, oral ulcers, non-erosive arthritis in at least two joints, and has received a positive test for ANA. A.R. 483-34. All four of these symptoms fulfill the

---

[2] Rockson went on to estimate that she's been in about 15-20 motor vehicle accidents in the past year and a half. A.R. 54. Rockson even got into an accident on her way to the administrative hearing:

| | |
|---|---|
| Rockson: | And just this morning, I ran over a sign. I didn't see it— |
| Q: | Is that why you were late? |
| Rockson: | Yes. I didn't see it, so I ran over the sign really bad. |
| Q: | All the way over it? |
| Rockson: | Yes. Uprooted the sign. I didn't see it. I didn't see a sign there. So, good thing it wasn't a person or anything. |

A.R. 55.

diagnostic critera for SLE identified by the American College of Rheumatology. A.R. 483. Dr. Mallah also noted that Rockson suffers from severe fatigue, involuntary weight loss, and malaise. A.R. 483. Furthermore, Dr. Mallah noted that Rockson's lupus affected her musculoskeletal and speech systems with at least a moderate level of severity, and that Rockson had exhibited repeated manifestations of SLE. A.R. 483.

Prior to completing the Lupus Source Statement in April 2013, Dr. Mallah noted that Rockson suffered from lupus on several occasions extending back to at least 2011. A.R. 491 (January 2013 "lupus"); A.R. 370 (October 2012 "lupus"); A.R. 373 (October 2011 "lupus").

C

On May 31, 2013, the Administrative Law Judge ("ALJ") denied Rockson's claim for benefits. The ALJ first noted that Rockson had not engaged in substantial gainful activity since January 20, 2012, the alleged onset date. A.R. 30. Second, the ALJ determined that Rockson suffered from the following severe impairments: (1) fibromyalgia/lupus with positive ANA; (2) depression and anxiety; (3) obesity; and (4) "history of motor vehicle accident with intermittent residual headaches and S1 radiculopathy."[3] A.R. 30. Third, the ALJ concluded that neither Rockson's lupus nor her mental impairment met the severity of one of the Listed Impairments in 20 C.F.R 404, Subpart P, Appendix 1. A.R. 30. Fourth, the ALJ determined that Rockson has the residual functional capacity to perform sedentary work, except that she "can never climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs, crawl, kneel, crouch, stoop, or balance; and is restricted to work not requiring a fast-paced production rate." A.R. 31. Fifth, the ALJ concluded that Rockson can return to perform past relevant work. A.R. 34.

---

[3] At Step Two, the ALJ also determined that the following impairments *were not* severe: Rockson's alleged syncope episodes; her carpal tunnel syndrome; her hypertension; and her irritable bowel syndrome. A.R. 30 ("[E]ven though these impairments are medically determinable they cannot be considered severe as they do not cause more than minimal limitation in Claimaint's ability to perform basic work activities.").

Accordingly, the ALJ concluded that Rockson was not disabled as defined in the Social Security Act and denied benefits. A.R. 35.

## II

Under the Social Security Act (SSA), a claimant is entitled to disability benefits if she can demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05. Rockson carries the burden of establishing that she meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A).

This Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

### III

In her appeal of the ALJ's decision, Rockson asserts two grounds for relief. First, she claims that the ALJ's conclusion that she failed to meet the requirements of Listing 14.02 at Step Three is not supported by substantial evidence. Furthermore, she argues, if the ALJ had properly determined that she met the criteria under Listing 14.02, she would be entitled to a presumption of disability. Second, Rockson claims that the ALJ did not articulate evidentiary support for his conclusion that Rockson could perform work at an unskilled level at Step Four.

### A

First, Rockson claims that she satisfies the requirements of Listing 14.02, entitling her to a presumption of disability. If a claimant meets the requirements of a Listed Impairment, then the claimant is considered disabled. 20 C.F.R § 404.1520(d). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a Listed Impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The ALJ compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the Listed Impairment. 20 C.F.R. § 404.1508. In determining whether a claimant's impairments are medically equivalent to a listing, the ALJ may consider all evidence in a claimant's record. 20 C.F.R. § 404.1526(c).

i

Rockson claims that her impairment—systemic lupus erythematosus[4]—meets or equals the Listing in 14.02. To meet a Listing in 14.02, a claimant must produce evidence demonstrating that she meets the following criteria:

> 14.02 Systemic lupus erythematosus. As described in 14.00D1 with:
>
> A.    Involvement of two or more organs/body systems, with:
>
>   1.    One of the organs/body systems involved at least a moderate level of severity; and
>
>   2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B.    Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>   1.    Limitation of activities of daily living.
>
>   2.    Limitation in maintaining social functioning.
>
>   3.    Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpart P, App.1.

The ALJ, however, rejected Rockson's claim that her SLE met the Listing in 14.02:

> Mustapha Mullah, MD completed a lupus questionnaire that suggests Claimant meets the requirements of listing 14.02. Even though Dr. Mullah suggests this listing is met, the medical evidence discussion below in Finding 5 is contrary to this assertion and the opinion is given little weight.

A.R. 30 (citations omitted). Then, in Finding 5, the ALJ provides further detail for why he was rejecting Dr. Mallah's, the treating physician, reports:

---

[4] "Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). . . . Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the *Primer on the Rheumatic Diseases* published by the Arthritis Foundation." 14.02.

> For these reasons, little weight is given to the opinions of doctors Alexandra Riabova, MD and Mustapha Mallah, DM, indicating that they believe Claimant is physically unable to work . . . Dr. Mullah cites symptoms in support of these restrictions as fatigue, weight loss, rashes and diffuse pain. However, the record discussed above does not support limitation to this degree and neither do Dr. Mullah's own very limited treatment notes . . . ."[5]

A.R. 34.[6] Thus, although acknowledging that Rockson suffered symptoms of SLE, the ALJ does not believe that these symptoms were severe enough to limit her ability to work. In other words, the ALJ does not appear to reject Dr. Mallah's report that the symptoms exist, just that he rejects the extent to which those symptoms impact Rockson's functioning. The ALJ therefore determined that Rockson did not meet the listing described in 14.02.[7]

Rockson claims that the ALJ's unexplained decision is not supported by substantial evidence. Although she does not specify which listing criteria she meets—14.02(A) or 14.02(B)—she lists the symptoms that Dr. Mallah had identified in the past, thereby implying that that she believes she meets the criteria of 14.02(A):[8]

A. Involvement of two or more organs/body systems, with:

    1.    One of the organs/body systems involved at least a moderate level of severity; and

    2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

---

[5] At various times throughout the opinion, the ALJ misspells Dr. Mallah's name. However, "Dr. Mullah" and "Dr. Mallah" refer to the same physician.

[6] In contrast, the ALJ gave much greater attention to whether Rockson's mental impairments met Listing 12.00. With respect to Listing 12.00, the ALJ discusses the criteria of Listing 12.04 (Affective Disorders) and explains why Rockson does not meet each criterion with specificity. A.R. 30-31.

[7] Prior determinations by other ALJs state that Rockson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," but do not specifically analyze whether Rockson meets the Listing for SLE in 14.00. A.R. 75 (2010 denial), 95 (2012 denial).

[8] It is noteworthy that it does not appear that Rockson would be able to meet the "marked limitations" requirements under 14.02(B). The ALJ noted, in finding that Rockson did not meet the listing for mental impairment under 12.00, that Rockson has only mild limitations in daily living; mild limitations in social functioning; and moderate difficulties with regard to concentration, persistence, or pace. Pg ID 65. Rockson does not challenge these conclusions. In addition, her treating physician, Dr. Mallah, found only moderate limitation in those three categories—not "marked." PgID 485. Therefore, the ALJ's (implicit) determination that Rockson cannot show marked limitation in functioning under 14.02(B) is supported by substantial evidence.

Her treating physician, Dr. Mallah, believes that Rockson meets the criteria set forth in 14.02. In the Lupus (SLE) Medical Source Statement, Dr. Mallah notes that 14.02(A)(1) is met because Rockson's lupus impacts two body systems—the musculoskeletal and speech systems—with at least a moderate level of severity.[9] A.R. 484. Dr. Mallah further notes that 14.02(A)(2) is met because Rockson experiences three of the constitutional symptoms of SLE: severe fatigue, involuntary weight loss, and malaise. A.R. 484.

The ALJ does not explicitly reject these conclusions.[10] Instead, he rejects Dr. Mallah's opinion that these symptoms cause significant limitations on her ability to work:

> Dr. Mallah goes into more detail in his most recent April 2013 opinion and indicates actual functional limitations that include an inability to sit for more than a total of 60 minutes during a regular eight hour work day, an inability to stand or walk for even 15 minutes total in an eight hour work day, an inability to lift or carry even five pounds, the need for a 20 minute rest period every hour, an inability to remain on task for even 75% of the day, and the likelihood of being absent from work more than four days per month. Dr. Mullah cites symptoms in support of these restrictions as fatigue, weight loss, rashes and diffuse pain. However, the record discussed above *does not support limitation to this degree* and neither do Dr. Mullah's own very limited treatment notes. As a result, no greater degree of limitation is reasonably supported than that which is indicated in the above adopted residual functional capacity.

A.R. 34 (emphasis added) (citations omitted).

However, Dr. Mallah's opinion on Rockson's work limitations are irrelevant at Step Three. *See Dowles v. Barnahrt*, 258 F. Supp. 2d 478, 487 (W.D. Mich. La 2003) ("[w]hether [claimant] could perform work activity (at least between SLE flare-ups) is irrelevant at this point."). Listing 14.02(A) does not require that a claimant have severe or marked *work limitations*. Indeed, the regulations explicitly warn that the definition of "severe" for Step 3 is not the same as the definition for "severe" with respect to Steps 4 and 5:

---

[9] Although the form requests that the physician "describe the pertinent signs and symptoms" evidencing the severity, Dr. Mallah did not do so.

[10] Indeed, at Step Two, the ALJ concluded that Rockson "has the following *severe* impairments: fibromyalgia/lupus with positive ANA . . . ." A.R. 30 (emphasis added).

- 8 -

> *Severe* means medical severity as used by the medical community. The term does not have the same meaning as it does when we use it in connection with a finding at the second step of the sequential evaluation processes in §§ 404.1520, 416.920, and 416.924.[11]

14.00(C)(12). Instead, the question to be considered at Step 3 is whether a claimant experiences the listed symptoms—which Rockson's treating physician answered in the affirmative.

Although the ALJ explained his reasons for rejecting Dr. Mallah's opinion on Rockson's work restrictions, he did not explain why he was rejecting Dr. Mallah's opinion on Rockson's symptoms.[12] But it is the ALJ's obligation to determine whether an impairment is "medically severe" within the meaning of the Listing. *See* 20 C.F.R. § 416.927(e). Moreover, an ALJ's Listing determination "must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002) ("By failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing.").

Here, the ALJ has not met his obligation of analyzing whether Rockson meets the Listing under 14.00. The ALJ does not reject Rockson's claim that she is suffering from symptoms of lupus, nor did he reject the medical evidence attesting to those symptoms; instead, he challenges the extent to which those symptoms affect her ability to perform work functions. This issue, however, is irrelevant to a Listings determination under 14.00.

---

[11] The second step of the sequential evaluation process involves determining a claimant's residual functioning capacity under Step Four.

[12] An ALJ is required to give controlling weight to a treating physician's opinion, so long as it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). Here, the ALJ believed that Dr. Mallah's opinion regarding Rockson's workplace limitations was inconsistent with other substantial evidence in the record. But the ALJ did not explain why Dr. Mallah's opinion regarding Rockson's symptoms was inconsistent with other substantial evidence in the record, as is his obligation.

**ii**

Although the ALJ did not explain his reasoning, this Court may not remand unless Rockson can show harm as a result of this error. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) ("the party seeking reversal normally must explain why the erroneous ruling caused harm"); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights"). Here, Rockson has shown she has suffered harm because there is evidence in the record that she suffered from lupus that met the Listing in 14.00. In the April 2013 Lupus Source Statement, Dr. Mallah explained that (1) Rockson had four of the diagnostic criteria for SLE identified by the American College of Rheumatology (malar rash, oral ulcers, non-erosive arthritis, and a positive ANA test); (2) Rockson experienced three of the constitutional symptoms (severe fatigue, involuntary weight loss, and malaise); (3) two body systems were involved to at least a moderate level of severity (musculoskeletal and speech); and (4) Rockson exhibited repeated manifestations of SLE. A.R. 483-84.

Dr. Mallah's 2013 report is substantiated by his or her earlier reports; as early as 2011 Dr. Mallah noted that Rockson suffered from SLE: "She also has a history of positive ANA . . . weakness, chronic fatigue, loss of hair, and polyarthralgia. She did develop a rash on the legs and lost 20 pound in six weeks. She complained of recurrent oral ulcers. I believe the patient is fulfilling the criteria to classify her as having systemic lupus erythematosus." A.R. 376.

Thus, there is evidence in the record that Rockson has met the criteria for Listing 14.00, which would create a presumption of disability. The ALJ never provided an explanation for why he was rejecting the evidence of Rockson's symptoms, as was his obligation. Because Rockson has pointed to evidence in the record that she met the criteria for Listing 14.00, she has shown that she suffered harm from the ALJ's refusal to explain his determination:

> The ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is required. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five. Additionally, in this case, correction of such error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet the listing. In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Reynolds v. Commissioner of Social Security*, 424 F. App'x 411, 416 (6th Cir. 2011).

While the ALJ may well reach the same ultimate conclusion on remand regarding Rockson's entitlement to benefits, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily would have found that Rockson did not satisfy the relevant Listing. Nor is it the Court's role to make such factual determinations in the first instance. *Clifton*, 79 F.3d at 1009. Because the ALJ does not explain his reasoning in rejecting Rockson's claim that she meets the Listing under 14.00, it is appropriate to remand to the ALJ to make a complete and supported finding. *See Christephore v. Commissioner of Social Security*, 2012 WL 2274328, at *10 (E.D. Mich. June 18, 2012) (remanding where the ALJ provided an incomplete Step Three analysis).

### iii

The Commissioner makes two arguments against remand. First, the Commissioner contends that Dr. Mallah is not a treating physician and therefore his or her opinion is entitled to less deference. Second, the Commissioner contends that Rockson has not shown a worsening of her condition or a newfound impairment since the denial of her previous claim for benefits in 2012.

These contentions, however, are more appropriately directed to Rockson's argument concerning Step Four (see below). The Commissioner is, in effect, contending that the ALJ's

determination of Rockson's residual functioning capacity was correct—but these contentions do not address whether the ALJ properly evaluated her symptoms at Step Three. For example, even if Dr. Mallah is not entitled to treating-physician status, the ALJ must nonetheless provide a reason for rejecting Dr. Mallah's opinion on Rockson's symptoms. Although a non-treating physician's opinion is entitled to less weight, Dr. Mallah's opinion is still evidence that must be considered and analyzed by the ALJ at Step Three.

And, regarding the Commissioner's second argument, as noted in footnote seven, it does not appear that any previous ALJ explained why Rockson's lupus did not meet the Listing Requirement in 14.00. Thus, because no ALJ had properly analyzed whether Rockson's lupus met the Listing in 14.00, whether she showed a worsening of symptoms is irrelevant.[13]

**B**

In her motion for summary judgment, Rockson also challenges the ALJ's conclusion at Step Four. At Step Four, the ALJ concluded that Rockson "has the residual functional capacity to perform sedentary work . . . except [Rockson] can never climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs, crawl, kneel, crouch, stoop, or balance; and is restricted to work not requiring a fast-paced production rate." A.R. 31. Rockson asserts that this residual functional capacity determination is not supported by substantial evidence. Because the ALJ erred in his Step Three analysis, however, the Court need not consider whether he erred at Step Four. *See Thornton v. Commissioner of Social Sec.*, 2013 WL 592442, at *14 n.15 (E.D. Mich. Jan. 10, 2013) report and recommendation adopted sub nom. *Thornton v. Astrue*, 2013 WL 588995 (E.D. Mich. Feb. 14, 2013).

---

[13] Instead, whether Rockson's symptoms worsened is relevant at Step Four, where the ALJ must determine a claimant's residual functioning capacity. Here, the ALJ noted that prior residual functioning capacity evaluations are binding unless Rockson presents new evidence of a worsening in symptoms or functioning. A.R. 32.

## IV

Accordingly, it is **ORDERED** that Plaintiff Rhanda Rockson's Motion for Summary Judgment (ECF No. 18) is **GRANTED** to the extent that it seeks remand.

It is further **ORDERED** that Defendant Commissioner's Motion for Summary Judgment (ECF No. 19) is **DENIED**.

It is further **ORDERED** that this matter is **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: October 24, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 24, 2014.

s/Tracy A. Jacobs  
TRACY A. JACOBS